UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X

In re

    ASTON BAKER,

                Debtor/Appellant.

------------------------------------X

CV-05-3487 (CPS)

Chapter 11
Case No. 1-01-24227 (DEM)

MEMORANDUM OPINION
AND ORDER

SIFTON, Senior Judge.

This case is before the Court on appeal from an order of

United States Bankruptcy Court for the Eastern District of New

York.  That decision authorized the auction of four of debtor

Aston Baker's properties and denied the debtor's request for a

stay of the sale or auction of the properties pending appeal to

this Court.  Presently before the Court is the debtor's renewed

Motion for Stay pursuant to Bankruptcy Rule 8005 and 28 U.S.C.

158(a).  For the reasons set forth below, the Motion for Stay is

denied.

**BACKGROUND**

The following facts are drawn from the parties' submissions

on this motion and the bankruptcy record on appeal.  They are

undisputed except where noted.

Debtor Aston Baker ("Debtor") is an individual who owns four

parcels of real property: (1) 1980 Campbell Road, Wall Township,

New Jersey ("Campbell Road Property"), (2) 135 Old Northwest

Road, East Hampton, New York ("East Hampton Property"), (3) 490

New York Avenue, Brooklyn, New York ("490 New York Property"),

and (4) 2325 Foster Avenue, Brooklyn, New York ("Foster Avenue

Property") (collectively, the "Properties").

On November 15, 2001, Debtor filed a voluntary petition for

relief under Chapter 7 of the Bankruptcy Code.  On January 24,

2002, the Bankruptcy Court converted Debtor's Chapter 7 case to a

Chapter 11 reorganization case.  Since that time, Debtor has

remained in possession of his assets and continued to manage his

business pursuant to Sections 1107 and 1008 of the Bankruptcy

Code.  A creditors' committee has never been formed and no

trustee or examiner has been appointed.[1]

On June 4, 2004, the Bankruptcy Court entered an order

confirming Debtor's Chapter 11 Plan of Reorganization (the

"Plan").  The Plan provides that the following classes of

creditors will be paid in full: (1) administrative creditors[2],

---

[1]"At any time after the commencement of the case but before confirmation of
a plan, on request of a party in interest or the United States trustee, and after
notice and a hearing, the court shall order the appointment of a trustee--
(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement
of the affairs of the debtor by current management, either before or after the
commencement of the case, or similar cause, but not including the number of
holders of securities of the debtor or the amount of assets or liabilities of the
debtor; or
(2) if such appointment is in the interests of creditors, any equity security
holders, and other interests of the estate, without regard to the number of
holders of securities of the debtor or the amount of assets or liabilities of the
debtor." 11 U.S.C. 1104(a).

[2]"This class consists of all of the costs and expenses of administration,
including managing agent, consultant, attorneys' and accountant's fees, awarded by
the Bankruptcy Court and payment of any quarterly fees due to the Office of the
United States Trustee." First Amended Joint Disclosure Statement, May 10, 2004, at
34 (hereinafter "Disclosure Statement").

(2) superpriority[3] and secured creditors[4], (3) tax creditors, and (4) unsecured nonpriority creditors.  Section 8.1 of the Plan states, "[t]he Cash created by the deposit into the Escrow Account from the sale of the 1980 Campbell Road and the proceeds of the refinancing of the Debtor's other real properties shall fund the distributions."  In order to effectuate the Plan, Debtor was to refinance all of the Debtor's properties with Galster Capital LLC ("Galster") on a short term basis and to sell the Campbell Road Property thereafter in order to satisfy creditor Galster's superpriority mortgage and the mortgages of creditors GreenPoint Mortgage "GreenPoint" and HomEq Mortgage Corporation ("HomEq").  In the alternative, Debtor was given the option of withdrawing the Campbell Road Property from sale conditioned upon Debtor obtaining other refinancing within six months.

Debtor implemented the plan to the extent of completing the refinancing with Galster and obtaining a loan in the amount of $4.9 million, secured by a superpriority first mortgage[5] lien on

---

[3]"The special priority status granted by the court to a creditor for extending credit to a debtor or trustee that cannot obtain unsecured credit from a willing lender," pursuant to 11 U.S.C. 364(c). "This priority may be either an administrative claim outranking other administrative claims or...a security interest in property." Black's Law Dictionary 1479 (8th ed.2004).

[4]This class consists of claims secured by Debtor's assets. Disclosure Statement at 35.

[5]A first mortgage is a "mortgage that is senior to all other mortgages on the same property." Black's Law Dictionary at 1479.

the Campbell Road Property and blanket mortgages[6] on the Properties. Debtor was to use rental income from the Properties to make monthly payments on the Galster loan. Galster contends, and it is not disputed, that Debtor has failed to make all of the required monthly payments on the loan.

At a hearing before the Bankruptcy Court on February 17, 2005 (after the expiration of the six month post confirmation option period), Charles Simpson, Esq, counsel to Debtor Aston Baker, ("First Counsel") advised the Bankruptcy Court that the Campbell Road Property had been advertised for sale by auction, but that no bids had been received. He further reported that although as of that date, Galster had received four checks from the Debtor, two of those checks had bounced. In addition, no payments had been made to GreenPoint or HomeEq. First Counsel advised the Bankruptcy Court that the parties had agreed to a thirty day extension of time during which the Debtor would attempt to enter into a private sale for the Campbell Road Property. In the alternative, the property would be referred to auctioneer Sheldon Goode for sale. The United States Trustee stated at that time that if this issue could not be resolved during the thirty day period, the case should be converted into a Chapter 7 liquidation case. *See* February 17, 2005, Transcript.

---

[6]A blanket mortgage is a "mortgage covering two or more properties that are pledged to support a debt." Black's Law Dictionary at 1032.

At a subsequent hearing before the Bankruptcy Court held more than thirty days later on March 22, 2005, First Counsel reported that Debtor had again failed to sell the Campbell Road Property and that he would be "bringing on an application for the approval of Mr. Hubbard and Sheldon Goode & Company's retention for the sale of all of Mr. Baker's properties as had been discussed at the last hearing," including "the property in East Hampton, the two residential buildings in Brooklyn and the property in Wall Township, New Jersey." First Counsel reminded the Bankruptcy Court that "the backup for the sale was an auction of the debtor's properties to be conducted by Sheldon Goode & Co., Inc." Mar. 22, 2005, Transcript, at 4.

Thereafter, on May 3, 2005, First Counsel, on behalf of Debtor, filed an application to employ Sheldon Goode & Company as auctioneer and to sell the Properties by auction ("Auction Application"). On that same day, the Bankruptcy Court deemed a letter it had received from Aston Baker requesting that Charles Simpson (First Counsel) be relieved as counsel a "Motion to Withdraw as Attorney Charles Simpson." At a hearing on May 12, 2005, the Bankruptcy Court relieved First Counsel as counsel. First Counsel represented Baker at the hearing on that day up until the point he was relieved as counsel by the Bankruptcy Court. *See* May 12, 2005, Transcript.

At a subsequent hearing held on June 2, 2005, Debtor was represented by Robert Lawler, Esq. Of Wollmuth, Maher & Deutsch, LLP ("Second Counsel"), who filed a "Limited Objection to Application for Auctioneer and to Sale of Properties."[7]  The Bankruptcy Judge indicated at this hearing that he would be granting the Auction Application authorizing the retention of the auctioneer and the sale by auction of the Properties.  On June 20, 2005, by written order, the Bankruptcy Court granted the Auction Application, despite Debtor's "limited objection."

Two days later, on June 22, 2005, Second Counsel was permitted to withdraw as Debtor's counsel.  At a hearing held on June 28, 2005, Gary C. Fischoff, Esq. ("Third Counsel") represented Baker and made an oral request for stay of the sale pending appeal.  The Bankruptcy Court set this application down for hearing on June 30, 2005.  At this hearing, Third Counsel withdrew as counsel, and the Bankruptcy Court deemed Debtor's Motion for Stay pending an Appeal a Motion for Reconsideration under Bankruptcy Rule 9024.

On July 8, 2005, the Bankruptcy Court held a hearing regarding Debtor's Motion for Reconsideration of the prior order granting the sale by auction.  At this hearing, still another

---

[7]The "limited objection" provided only that the motion to appoint an auctioneer and sell the Properties by auction should be denied or adjourned due to Second Counsel's belief that a proposed lender might be willing to provide sufficient funds to pay in full Baker's obligations to Galster and to satisfy all junior mortgages, and that the lender had agreed to close within days, possibly as early as June 3, 2005.

lawyer, Stuart P. Gelberg, Esq., ("Current Counsel") appeared for the Debtor. The Bankruptcy Court denied the Motion for Reconsideration. Current Counsel made an oral Motion for Stay of the order pending appeal, which the Bankruptcy Court also denied.

On July 26, 2005, the Bankruptcy Court held Debtor in contempt for failing to comply with its direction to produce documents and to turn over rents to Galster. Galster alleges, and Debtor does not dispute, that Debtor again failed to turn over rents to Galster.

On July 13, 2005, Debtor timely filed a Notice of Appeal of the Bankruptcy Court's decision to authorize the auction. On July 26, 2005, Debtor sought, and this Court granted, a temporary stay and directed the parties to show cause why the stay should not be extended pending the disposition of the appeal. For the reasons and upon the findings of fact and conclusions of law which follow, the application for a stay of the auction pending appeal is denied.

**DISCUSSION**

<u>Jurisdiction</u>

This Court has jurisdiction to hear this Motion pursuant to Bankruptcy Rule 8005 and 28 U.S.C. 158(a).

<u>Standard for Motion for Stay</u>

When reviewing decisions of the Bankruptcy Court, District Courts should apply a de novo standard of review to the

Bankruptcy Court's conclusions of law and review a Bankruptcy Court's findings of fact under a clearly erroneous standard. *See* Fed. R. Bankr.P. 8013; *In re First Central Financial Corp.*, 377 F.3d 209, 212 (2d Cir. 2004); *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988 (2d Cir. 1990).

When ruling on a Motion for Stay pending appeal under Bankruptcy Rule 8005, a court must consider the following four factors: (1) the likelihood that the party seeking the stay will succeed on the merits of the appeal; (2) the irreparable harm to the movant if the stay is denied; (3) whether there will be substantial harm to other parties if the stay is granted; and (4) the harm to the public interest. *In re Slater*, 200 B.R. 491, 495 (E.D.N.Y.1996) (*citing In re Sphere Holding Corp.*, 162 B.R. 639, 642 (E.D.N.Y. 1994); *In re Issa Corp.*, 142 B.R. 75, 77 (Bankr. S.D.N.Y. 1992); *In re Myerson & Kuhn*, 121 B.R. 145, 153 (Bankr. S.D.N.Y. 1990); *In re Charles & Lillian Brown's Hotel, Inc.*, 93 B.R. 49, 53 (Bankr. S.D.N.Y. 1988); *In re Cretella*, 47 B.R. 382, 383 (E.D.N.Y. 1984) ). "The case law suggests that all four criteria must be satisfied for a stay to be issued." *Id.* at 495 (*citing Issa Corp.*, 142 B.R. 75, 77 (Bankr. S.D.N.Y. 1992); *Charles & Lillian Brown's Hotel*, 93 B.R. 49, 53-54 (Bankr. S.D.N.Y. 1988)). Stays pending an appeal from Bankruptcy Court should only be granted in limited circumstances. *See In re Gucci*, 105 F.3d 837, 840 (2d Cir. 1997) ("We do not mean to imply

that district courts should routinely grant stays pending appeal, or even routinely grant brief stays to permit this Court to consider granting such stays. There may well be substantial reasons for closing a sale promptly and assuring a good faith buyer that the sale cannot be undone."). The single most important factor is likelihood of success on the merits. *See, e.g., In re 1567 Broadway Ownership Associates,* 202 B.R. 549, 552 (S.D.N.Y.1996).

I consider these four factors, in turn, below.

*Likelihood of Success on the Merits*

The party seeking a stay pending appeal is required to show that "its arguments raise a substantial possibility, although less than a likelihood, of success" on the merits. *Hayes v. City Univ. of New York*, 503 F.Supp. 946, 963 (S.D.N.Y.1980), *aff'd*, 648 F.2d 110 (2d Cir. 1981).

In denying Debtor's Motion for Reconsideration, the Bankruptcy Court held that its order authorizing the sale by auction constituted a "direction to the debtor to perform an act that is necessary for the confirmation" of the Plan pursuant to Bankruptcy Rules 1141 and 1142. The Bankruptcy Court reasoned that the order did not constitute a modification of the plan; rather, it was "the only proper step that could be taken to insure even the remote possibility that this plan could even be substantially consummated." Jul. 8, 2005, Transcript, at 35. In

his submissions to this Court, Debtor does not address the reasoning put forth by the Bankruptcy Court. Rather, Debtor argues that the Bankruptcy Court improperly *modified* the Plan pursuant to Bankruptcy Rule 1127 (though he fails to address why the Bankruptcy Court's order should be viewed as a modification of the plan as opposed to a direction necessary to effectuate the Plan). Creditor Galster argues that the Bankruptcy Court was correct in determining that the order did not constitute a modification of the Plan, but instead was specifically required to enforce the Plan pursuant to Rule 1141. Galster further argues that even if this Court determines that the Bankruptcy Court's order amounted to a modification of the Plan, that modification was warranted and correctly administered.

I find that the order constituted a permissible modification of the Plan pursuant to Rule 1127, and that the Plan was properly modified. There is, as a result, no substantial possibility, much less a likelihood, that the Debtor will prevail on the merits.

**Bankruptcy Court's Authority to Modify the Plan Pursuant to 11 U.S.C. §1141 and §1142**

In approving the Auction Application and denying Debtor's Motion for Reconsideration of the order, the Bankruptcy Judge reasoned that, by failing to sell and refinance his properties and fulfill the required distribution to creditors as required

under the Plan, the Debtor was in default and had breached his

obligations under the confirmed Plan.  The Bankruptcy Judge thus

concluded that Rules 1141 and 1142 of the Bankruptcy Code

authorized him to order the sale of Debtor's Properties in order

to remedy Debtor's breach.  Jul. 8, 2005, Transcript, at 32-34.

Creditor Galster, relying on Rule 1141, similarly argues that the

Bankruptcy Court's order was necessary to remedy Debtor's breach

and to effectuate the terms of the Plan.

    Bankruptcy Rule 1141, in relevant part, provides:

    the provisions of a confirmed plan bind the debtor, any
    entity issuing securities under the plan, any entity
    acquiring property under the plan, and any creditor,
    equity security holder, or general partner in the debtor,
    whether or not the claim or interest of such creditor,
    equity security holder, or general partner is impaired
    under the plan and whether or not such creditor, equity
    security holder, or general partner has accepted the
    plan. 11 U.S.C. 1141(a).


Rule 1142 states:

    (a)    Notwithstanding    any    otherwise    applicable
    nonbankruptcy  law,  rule,  or  regulation  relating  to
    financial condition, the debtor and any entity organized
    or to be organized for the purpose of carrying out the
    plan shall carry out the plan and shall comply with any
    orders of the court.
    (b)  The  court  may  direct  the  debtor  and  any  other
    necessary party to execute or deliver or to join in the
    execution  or  delivery  of  any  instrument  required  to
    effect a transfer of property dealt with by a confirmed
    plan,  and  to  perform  any  other  act,  including  the
    satisfaction  of  any  lien,  that  is  necessary  for  the
    consummation of the plan.  11 U.S.C. 1142.

    It is well settled that the Bankruptcy Court has

jurisdiction over post-confirmation issues as part of its

inherent power to enforce its own orders. *See In re Chateaugay Corp.*, 213 B.R. 633, 640 (S.D.N.Y.1997) (stating that section 1142 codifies the Bankruptcy Court's power to enforce its own sale orders); *In re Johns Manville Corp.*, 97 B.R. 174, 179-80 (Bankr. S.D.N.Y. 1989) (enforcing an injunction contained in a plan of reorganization and noting that "the bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders in aid of their proper execution").

Section 1142, however, does not *confer* jurisdiction on the Bankruptcy Court; rather, it codifies the Bankruptcy Court's equitable powers. *In re Chateaugay Corp.*, 213 B.R. 633, 640 (S.D.N.Y.,1997). "In a sense, [this section] codifies the bankruptcy court's inherent power to enforce its own orders. The sole basis for the Bankruptcy Court's jurisdiction, therefore, is its inherent power to enforce its own orders and hear challenges to the validity of proceedings held before it."

Courts have thus generally held that Rules 1141 and 1142 do not give Bankruptcy Judges authority to modify a confirmed Plan, rather, they give Bankruptcy Judges authority to perform acts related to the implementation and execution of a plan that are otherwise provided for in the Bankruptcy Code. *Id., See also Goodman v. Phillip R. Curtis Enterprises, Inc.*, 809 F.2d 228, 232-233 (4th Cir. 1987) (holding that Rule 1142 vests jurisdiction to modify pursuant to Rule 1127). A "bankruptcy

court retains post-confirmation jurisdiction in a chapter 11 proceeding only to the extent provided in the plan of reorganization." *In re Johns-Mansville Corp.*, 7 F.3d 32, 34 (2d Cir. 1993); *see also In re Neptune World Wide Moving, Inc.*, 111 B.R. 457, 462 (Bankr. S.D.N.Y. 1990); *see also In re Aylesbury Inn, Inc.*, 121 B.R. 675, 677 (Bankr. N.D.N.Y. 1990); *see also In re A.R.E. Mfg. Co.*, 138 B.R. 996, 999 (Bankr. M.D.Fla. 1992); *see also In re Allied Technology, Inc.*, 25 B.R. 484, 499 (Bankr. S.D.Ohio 1982).

Article 13 of the Plan at issue in this case states that, pursuant to sections 105(a), 1127 and 1142(b) of the Bankruptcy Code, the Bankruptcy Court retains jurisdiction for the following purposes: "[t]o enforce and administer the provisions of the Plan,...[t]o consider any modification of this Plan under section 1127 of the Bankruptcy Code,...[t]o correct any defect, cure any omission or reconcile any inconsistency in the Plan or Confirmation Order as may be necessary to carry out the purposes and intent of the Plan," and "to enter such orders as may be necessary or appropriate in aid of confirmation and to facilitate implementation of the Plan...."

The Confirmation Order itself states that the Bankruptcy Court retains post-confirmation jurisdiction "[t]o determine any and all disputes arising under or relating to this Plan and any documents ancillary thereto and to issue such orders as may be

necessary for the implementation, execution and consummation of the Plan,...[t]o modify this Plan to the full extent permitted by the Bankruptcy Code, or to remedy any apparent non-material defect or omission in this Plan, or to reconcile any nonmaterial inconsistency in this Plan so as to carry out its intent and purposes," and "[t]o enter such orders as may be necessary or appropriate in aid of Confirmation and to facilitate implementation of the Plan."

The Plan and Confirmation Order clearly vest in the Bankruptcy Judge jurisdiction to resolve post-confirmation issues that must be resolved in order to implement the plan; however, modifications to the Plan can only be made to the extent permitted by the Bankruptcy Code. As more fully explained below, modifications to the Plan such as the one at issue, can be made only pursuant to Rule 1127.

The Bankruptcy Judge and creditor Galston argue that Debtor, by failing to meet its obligations under the Plan, was in breach of provisions of plan, and that the order appointing the auctioneer and allowing for the sale of the Properties was merely a remedy for the breach. If a Bankruptcy Judge finds that a Debtor is failing to fulfill its obligations under a Chapter 11 reorganization plan, however, the proper course of action is to convert the case to a Chapter 7 bankruptcy. *See* 11 U.S.C. 1112(b) (stating, in relevant part, "on request of a party in

interest or the United States trustee or bankruptcy
administrator, and after notice and a hearing, the court may
convert a case under this chapter to a case under chapter 7 of
this title or may dismiss a case under this chapter, whichever is
in the best interest of creditors and the estate, for cause,
including...inability to effectuate a plan"); *See, e.g.,
Donaldson v. Bernstein*, 104 F.3d 547 (3d Cir. 1997).
Alternatively, the Bankruptcy Court can, upon motion by the
proponent of the plan, modify the plan pursuant to Rule 1127.

According to 11 U.S.C. 1127, "[a]fter confirmation of a
plan, only the proponent of the plan or the reorganized debtor
may seek to modify the plan. Any party that is cooperating with
a plan proponent may wish to be a co-proponent of the plan in
order to be able to initiate a motion to modify. Because the
court is neither the plan proponent nor the reorganized debtor,
it does not have standing to order a modification sua sponte,
without a request by the plan proponent or the reorganized
debtor." Norton Bankruptcy Law and Practice 2d (July 2005), 4
Norton Bankr. L. & Prac. 2d § 94:2 (internal citations omitted).

In the present case, the Bankruptcy Judge's reading of Rules
1141 and 1142 would render the Rule 1127 restrictions placed on
Bankruptcy Courts' post-confirmation modification authority
superfluous. In holding that his order did not constitute a
modification of the plan under Rule 1127, but instead constituted

a permissible direction pursuant to Rule 1142, the Bankruptcy
Judge was apparently relying on the rule's language, which
states, in part, "the [Bankruptcy] Court may direct the
debtor...to execute or deliver or to join in the execution or
delivery of any instrument required to effect a transfer of
property dealt with by a confirmed plan, *and to perform any other*
*act*...that is necessary for the consummation of the plan." 11
U.S.C. 1142(b) (emphasis added).  If Rule 1142 gave Bankruptcy
Judges outright authority to order any act necessary for the
consummation of a plan, however, the Rule 1127 restriction
against sua sponte modifications would be rendered meaningless.
I conclude therefore that the Bankruptcy Judge did not have post-
confirmation jurisdiction to order the sale of the Properties
pursuant to Rules 1141 and 1142.  That order must instead be
justified, if it can be justified, as a modification of the Plan
under Rule 1127.  I turn now to that issue.

**Modification of the Plan Under 11 U.S.C. 1127**

"Subsection 1127(b) provides the sole means for modification
of the plan of reorganization after it has been confirmed."
LAWRENCE P. KING ET AL., COLLIER ON BANKRUPTCY ¶ 1127.04 (15th
ed. Rev.1997) (hereinafter "Collier on Bankruptcy").  According
to Section 1127(b):

> [t]he proponent of a plan or the reorganized debtor may
> modify such plan at any time after confirmation of such
> plan and before substantial consummation of such plan,
> but may not modify such plan so that such plan as

- 17 -

modified fails to meet the requirements of sections
1122 and 1123 of this title.  Such plan as modified
under this subsection becomes the plan only if
circumstances warrant such modification and the court,
after notice and a hearing, confirms such plan as
modified, under section 1129 of this title."

Section 1127(c) states, "[t]he proponent of a modification shall

comply with section 1125 of this title with respect to the plan

as modified."

Debtor argues, first, that the modification was improper

because the Plan had already been "substantially consummated."

The question of whether a plan has been substantially

consummated is one of fact.  *In re Lafayette Hotel Partnership*,

1997 WL 599386, at *2 (S.D.N.Y.1997)(citing *Collier on Bankruptcy*

¶1101-8).  Substantial consummation is defined in the Bankruptcy

Code as:

(A) transfer of all or substantially all of the property
proposed by the plan to be transferred;
(B) assumption by the debtor or by the successor to the
debtor under the plan of the business or of the
management of all or substantially all of the property
dealt with by the plan; and
(C) commencement of distribution under the plan.  11
U.S.C. 1101(2).

In order for a plan to be deemed substantially consummated, all

three factors must have been met.  *Collier on Bankruptcy* ¶

1102.02[2], at 1101-7.

Because the question of whether a plan has been

substantially consummated is an issue of fact, this Court must

review the Bankruptcy Court's determination that this plan had

not been substantially consummated under a clearly erroneous
standard.  *See* Fed. R. Bankr.P. 8013; *In re First Central
Financial Corp.*, 377 F.3d 209, 212 (2d Cir. 2004); *In re
Ionosphere Clubs, Inc.*, 922 F.2d 984, 988 (2d Cir. 1990).

In its July 8, 2005 denial of Debtor's Motion for
Reconsideration, the Bankruptcy Court made clear that it did not
view the Plan as having been substantially consummated, and, in
fact, that the order approving the sale by auction was the only
step that could possibly lead to substantial consummation.  July
8, 2005, Transcript, at 35 (stating, "the Court believes that
order was appropriately entered, legally sustained and the only
proper step that could be taken to insure even the remote
possibility that this plan could even be substantially
consummated.") The Bankruptcy Court found that whereas the
confirmed Plan called for 100 percent distribution to creditors
to begin after the sale of the Campbell Road Properties, "none of
the anticipated transactions have taken place." *Id.* at 33.  It is
not disputed that the Campbell Road Property has to date not been
sold, and that distribution to multiple creditors has not
occurred.  The Bankruptcy Court also found that the Debtor
"failed to refinance its properties as required under the
confirmed plan...." *Id.* at 34.  The factual finding by the
Bankruptcy Court that the Plan was not substantially consummated
survives a clearly erroneous standard of review.  I therefore

find that the "substantial consummation" requirement of a Rule 1127 post-confirmation modification did not preclude the Bankruptcy Court from modifying the Plan in this case.

As for the remaining requirements, Debtor does not argue that the modification violated Sections 1122, 1123, 1129, or 1125. Rather, Debtor contends that the Bankruptcy Judge failed to follow appropriate procedures for modification. Specifically, Debtor states, "[i]n the case at bar, there was no motion to modify, there was no amended disclosure statement and there was no finding by the Court that the change in the plan was approved or met the requirements of confirmation under Sect. 1129 of the Code." Further, Debtor contends that the modification was not requested by the proponent of the Plan, because First Counsel had been terminated at the time he made the Auction Application.

"A modification is effective only if the court, after notice and a hearing, confirms the plan as modified." Norton Bankruptcy Law and Practice 2d (July 2005), 4 Norton Bankr. L. & Prac. 2d § 94:2. In the case at bar, Debtor's attorney filed a motion seeking authority to auction the Properties on May 3, 2005 and had previously expressed to the Bankruptcy Court and the creditors on March 22, 2005 and February 17, 2005 Debtor's intention to file such an application. In the written order authorizing the sale of the Properties by auction, dated June 20, 2005, the Bankruptcy Court noted that it issued the Order only

after "all parties who desired to be heard by the Court [had] been given the opportunity to be heard" and "the Court [had] reviewed all of the papers filed in opposition and in limited opposition to the Application...." Thus, the notice and hearing requirements of section 1127 were clearly fulfilled.

Debtor's argument that the modification should be invalidated because the parties did not submit a new disclosure statement also fails. Section 1127(c) requires that all modifications satisfy the adequacy-of-disclosure concerns of §1125, however, courts have held that lack of a formally amended disclosure statement does not invalidate a Rule 1127 modification. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 411 ("[I]f the modification were sufficiently minor, the court might determine that additional disclosure was not required under the circumstances.") *See also, In re Temple Zion*, 125 B.R. 910 (Bankr. E.D.Pa. 1991) (formal disclosure statement unnecessary where modification affected only interests of creditor who participated in proceedings on proposed modification; no other allegedly impaired class was affected in any direct way by the proposed modification). *See also In re FCX, Inc.*, 853 F.2d 1149 (4th Cir. 1988), cert. denied, 489 U.S. 1011 (1989) (failure to comply with all of the requirements for formal plan modification not fatal).

Finally, Debtor contends that the motion seeking authority
to auction the Properties was not filed on behalf of Debtor or
proponent of the Plan, since First Counsel no longer represented
Debtor when he filed the motion on May 3, 2005.  Such an argument
is disingenuous.  The Bankruptcy Court received Baker's letter
(which it deemed a motion) asking the Court to relieve First
Counsel as counsel on that day; however, his motion by its terms
was not self-executing.  First Counsel was not relieved as
counsel by the Bankruptcy Court until after the motion was filed.
In fact, First Counsel represented Baker at a hearing on May 12,
2005 until he was relieved as counsel by the Bankruptcy Court.
Although First Counsel had indicated on multiple occasions that
he intended to file the Auction Application, Baker did not object
until June 2005, well after First Counsel had been relieved as
counsel.  Indeed, neither in his letter to the Bankruptcy Court
asking that First Counsel be relieved as counsel, nor at the
hearing on May 12, 2005, did Baker indicate that the Auction
Application had anything to do with his reason for terminating
First Counsel.  Debtor only later, in June 2005, filed a limited
objection to the motion through Second Counsel.  Thereafter, the
Bankruptcy Court, upon a full hearing on the motion and
objection, entered an order approving the sale.   I therefore
find that Debtor is not likely to succeed on the merits of his
appeal, nor is there a substantial possibility that he would

succeed on appeal.  Having determined that the motion for stay
must be dismissed on this ground alone, I need not assess the
remaining prongs of the Rule 8005 test.  Nevertheless, as further
explained below, I find that Debtor's motion fails on those
grounds as well.

*Irreparable Harm to the Debtor*

Although, as explained above, likelihood of success on the
merits is the most important factor in considering whether a stay
pending an appeal from a Bankruptcy Court order should be
granted, District Courts should also consider whether there will
be irreparable harm to the movant if the stay is *not* granted,
whether there will be substantial harm to other parties if the
stay *is* granted, and whether the stay will harm the public
interest.

Debtor claims that he will be irreparably harmed if the stay
is not granted because he will lose the equity in his properties
if they are sold, and that this equity is "necessary for his
financial future." Debtor further claims that he will be
irreparably harmed because if the properties are sold, his appeal
will become moot.  I find the Debtor has failed to show
irreparable harm sufficient to require a stay pending appeal.

Although Debtor will indeed lose the equity in his
properties if they are sold, this loss is, in Debtor's case,
inevitable.  If Debtor continues to be unable to fulfill his

obligations under the reorganization plan as he has been so far, the Bankruptcy Court will, in all likelihood, be obliged to convert his Chapter 11 case into a Chapter 7 case, thereby liquidating his assets. Debtor himself has a significant interest in fulfilling his obligations under the Plan and paying off his debts, which sale of the Properties will allow him to do. Debtor has already been held in contempt of court for failing to make payments under the Plan and therefore faces irreparable harm if the properties are *not* sold.

Debtor cites *In re St. Johnsbury Trucking Company*, 185 B.R. 687 (S.D.N.Y. 1995), for the proposition that the possibility of rendering an appeal moot constitutes irreparable harm to the movant. The present case is distinguishable from *St. Johnsbury Trucking*, however, because here, the subject of the stay (the sale of the Properties) is also the subject of the appeal, and, as I have already determined, Debtor is unlikely to succeed on the merits of his appeal. In *St. Johnsbury Trucking*, in contrast, the Court found that the government would suffer irreparable injury if distributions under a Chapter 11 plan were not stayed because those distributions would constitute substantial consummation of the plan, and the government's appeal of certain provisions of that plan would therefore become moot. Clearly, the government in that case had a greater risk of suffering irreparable injury than Debtor does in the present

case.  As other courts have noted, the possibility that an appeal

will be rendered moot by a denial of stay does not, in and of

itself, constitute irreparable harm.  *See, e.g., In re Shenendoah*

*Realty Partners, L.P.*, 248 B.R. 505, 510 (W.D.Va. 2000); *In re*

*203 North LaSalle Street Partnership*, 190 B.R. 595, 598 (N.D.Ill.

1995); *In re Kent*, 145 B.R. 843, 844 (Bankr. E.D.Va. 1991); *In re*

*Charter Co.*, 72 B.R. 70, 72 (Bankr. M.D.Fla. 1987); *In re Public*

*Serv. Co. Of New Hampshire*, 116 B.R. 347, 350 (Bankr. D.H.H.

1990).

### Substantial Harm to Other Parties

Debtor also contends that his creditors will not face any

substantial harm from a continuation of the stay.  He contends

that Galster and Homeq can proceed with state law remedies which

will not be affected by this stay.  He also claims that creditors

are protected by a substantial equity cushion[8] in regards to the

Properties; therefore, they will not be harmed if sale of the

Properties is delayed pending appeal.  Contrary to Debtor's

argument, I find that creditors will experience substantial harm

if sale of these Properties is delayed.

Debtor initially filed for bankruptcy in November 2001 and

the Plan was approved by the Bankruptcy Court in June 2004.  It

is not disputed that Debtor has failed in contempt of the

---

[8]Debtor claims that the Properties are valued at over $11 million, and that Debtor's secured obligations are approximately $8.5 million, therefore, the secured creditors are protected by an equity cushion of at least $2.5 million.

Bankruptcy Court to make payments to creditors as required by the Plan. Distributions to creditors have therefore already been delayed, and a stay of the sale of the Properties will, in all likelihood, further delay distributions owed creditors under the Plan. *See, e.g., In re Great Barrington Fair and Amusement, Inc.*, 53 B.R. 237, 240 (Bankr. D.Mass.1985); *In re Charter Co.*, 72 B.R. 70, 71 (M.D. Fla.1987); *In re Public Serv. Co. Of New Hampshire*, 116 B.R. 347, 350 (Bankr. D.H.H. 1990); *In re Sunflower Racing, Inc.*, 225 B.R. 225, 228 (D.Kan. 1998).

I therefore find that the substantial harm to creditors posed by a stay pending appeal warrants denying a stay in this case.

## *Public Interest*

Lastly, Debtor contends that the stay will not harm the public interest, but will serve the public interest by securing Debtor's due process right to an appeal. Having determined that the Debtor is unlikely to succeed on appeal, I find that the public interest is better served by allowing distributions under the Plan to proceed in an expeditious manner. *See In re Savage & Associates, P.C.*, 2005 WL 488643, 2 (S.D.N.Y. 2005)(stating, "the public interest favors the expedient administration of the bankruptcy proceedings..."); *In re Metiom, Inc.*, 318 B.R. 263, 272 (S.D.N.Y. 2004) ("This Court finds that the public interest in the expeditious administration of bankruptcy cases as well as

in the preservation of the bankrupt's assets for purposes of paying creditors, rather than litigation of claims lacking a substantial possibility of success, outweighs the public interest in resolving the issues presented here on appeal.")

**CONCLUSION**

For the reasons set forth above, Debtor's Motion for Stay pending appeal is denied.

The Clerk is directed to furnish a filed copy of the within to all parties and to the bankruptcy court.

SO ORDERED.

Dated : Brooklyn, New York

August 31, 2005

By: /s/ Charles P. Sifton (electronically signed)
United States District Judge