UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X

In re

      ASTON BAKER,

               Debtor/Appellant.

-----------------------------------X

CV-05-3487 (CPS)

Chapter 11
Case No. 1-01-24227 (DEM)

MEMORANDUM OPINION
AND ORDER

SIFTON, Senior Judge.

    This case is before the Court on appeal from an order of
United States Bankruptcy Court for the Eastern District of New
York.  That decision authorized the auction of four of debtor
Aston Baker's properties.  Presently before the Court is creditor
Galster Capital, LLC's motion to dismiss the appeal based on
mootness.  For the reasons set forth below, the motion to dismiss
is granted.

## BACKGROUND

    The following facts are drawn from the parties' submissions
on this motion and the bankruptcy record on appeal.  They are
undisputed except where noted.

    Debtor Aston Baker ("Debtor") is an individual who owned
four parcels of real property: (1) 1980 Campbell Road, Wall
Township, New Jersey ("Campbell Road Property"), (2) 135 Old
Northwest Road, East Hampton, New York ("East Hampton Property"),
(3) 490 New York Avenue, Brooklyn, New York ("490 New York

Property"), and (4) 2325 Foster Avenue, Brooklyn, New York ("Foster Avenue Property") (collectively, the "Properties").

On November 15, 2001, Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On January 24, 2002, the Bankruptcy Court converted Debtor's Chapter 7 case to a Chapter 11 reorganization case. Since that time until recently, Debtor remained in possession of his assets and continued to manage his business pursuant to Sections 1107 and 1008 of the Bankruptcy Code.

On June 4, 2004, the Bankruptcy Court entered an order confirming Debtor's Chapter 11 Plan of Reorganization (the "Plan"). The Plan provides that the following classes of creditors will be paid in full: (1) administrative creditors[1], (2) superpriority[2] and secured creditors[3], (3) tax creditors, and (4) unsecured nonpriority creditors. Section 8.1 of the Plan states, "[t]he Cash created by the deposit into the Escrow Account from the sale of the 1980 Campbell Road and the proceeds of the refinancing of the Debtor's other real properties shall

---

[1]"This class consists of all of the costs and expenses of administration, including managing agent, consultant, attorneys' and accountant's fees, awarded by the Bankruptcy Court and payment of any quarterly fees due to the Office of the United States Trustee." First Amended Joint Disclosure Statement, May 10, 2004, at 34 (hereinafter "Disclosure Statement").

[2]"The special priority status granted by the court to a creditor for extending credit to a debtor or trustee that cannot obtain unsecured credit from a willing lender," pursuant to 11 U.S.C. 364(c). "This priority may be either an administrative claim outranking other administrative claims or...a security interest in property." Black's Law Dictionary 1479 (8th ed.2004).

[3]This class consists of claims secured by Debtor's assets. Disclosure Statement at 35.

fund the distributions." In order to effectuate the Plan, Debtor was to refinance all of the Debtor's properties with Galster Capital LLC ("Galster") on a short term basis and to sell the Campbell Road Property thereafter in order to satisfy creditor Galster's superpriority mortgage and the mortgages of creditors GreenPoint Mortgage ("GreenPoint") and HomEq Mortgage Corporation ("HomEq"). In the alternative, Debtor was given the option of withdrawing the Campbell Road Property from sale conditioned upon Debtor obtaining other refinancing within six months.

Debtor implemented the plan to the extent of completing the refinancing with Galster and obtaining a loan in the amount of $4.9 million, secured by a superpriority first mortgage[4] lien on the Campbell Road Property and blanket mortgages[5] on the Properties. Debtor was to use rental income from the Properties to make monthly payments on the Galster loan. Galster contends that Debtor failed to make all of the required monthly payments on the loan.

At a hearing before the Bankruptcy Court on February 17, 2005 (after the expiration of the six month post confirmation option period), Charles Simpson, Esq., counsel to Debtor Aston Baker, ("First Counsel") advised the Bankruptcy Court that the

---

[4]A first mortgage is a "mortgage that is senior to all other mortgages on the same property." Black's Law Dictionary at 1479.

[5]A blanket mortgage is a "mortgage covering two or more properties that are pledged to support a debt." Black's Law Dictionary at 1032.

Campbell Road Property had been advertised for sale by auction, but that no bids had been received. He further reported that although as of that date, Galster had received four checks from the Debtor, two of those checks had bounced. In addition, no payments had been made to GreenPoint or HomeEq. First Counsel advised the Bankruptcy Court that the parties had agreed to a thirty day extension of time during which the Debtor would attempt to enter into a private sale for the Campbell Road Property. In the alternative, the property would be referred to auctioneer Sheldon Goode for sale. The United States Trustee stated at that time that if this issue could not be resolved during the thirty day period, the case should be converted into a Chapter 7 liquidation case. *See* February 17, 2005, Transcript.

At a subsequent hearing before the Bankruptcy Court held more than thirty days later on March 22, 2005, First Counsel reported that Debtor had again failed to sell the Campbell Road Property and that he would be "bringing on an application for the approval of Mr. Hubbard and Sheldon Goode & Company's retention for the sale of all of Mr. Baker's properties as had been discussed at the last hearing," including "the property in East Hampton, the two residential buildings in Brooklyn and the property in Wall Township, New Jersey." First Counsel reminded the Bankruptcy Court that "the backup for the sale was an auction

of the debtor's properties to be conducted by Sheldon Goode & Co., Inc." Mar. 22, 2005, Transcript, at 4.

Thereafter, on May 3, 2005, First Counsel, on behalf of Debtor, filed an application to employ Sheldon Goode & Company as auctioneer and to sell the Properties by auction ("Auction Application"). On that same day, the Bankruptcy Court deemed a letter it had received from Aston Baker requesting that Charles Simpson (First Counsel) be relieved as counsel a "Motion to Withdraw as Attorney Charles Simpson." At a hearing on May 12, 2005, the Bankruptcy Court relieved First Counsel as counsel. First Counsel represented Baker at the hearing on that day up until the point he was relieved as counsel by the Bankruptcy Court. *See* May 12, 2005, Transcript.

At a subsequent hearing held on June 2, 2005, Debtor was represented by Robert Lawler, Esq. Of Wollmuth, Maher & Deutsch, LLP ("Second Counsel"), who filed a "Limited Objection to Application for Auctioneer and to Sale of Properties."[6] The Bankruptcy Judge indicated at this hearing that he would be granting the Auction Application authorizing the retention of the auctioneer and the sale by auction of the Properties. On June 20, 2005, by written order, the Bankruptcy Court granted the

---

[6]The "limited objection" provided only that the motion to appoint an auctioneer and sell the Properties by auction should be denied or adjourned due to Second Counsel's belief that a proposed lender might be willing to provide sufficient funds to pay in full Baker's obligations to Galster and to satisfy all junior mortgages, and that the lender had agreed to close within days, possibly as early as June 3, 2005.

Auction Application (the "Auction Order"), despite Debtor's "limited objection."

Two days later, on June 22, 2005, Second Counsel was permitted to withdraw as Debtor's counsel. At a hearing held on June 28, 2005, Gary C. Fischoff, Esq. ("Third Counsel") represented Baker and made an oral request for stay of the sale pending appeal of the Auction Order. The Bankruptcy Court set this application down for hearing on June 30, 2005. At this hearing, Third Counsel withdrew as counsel, and the Bankruptcy Court deemed Debtor's Motion for Stay pending an Appeal a Motion for Reconsideration under Bankruptcy Rule 9024.

On July 8, 2005, the Bankruptcy Court held a hearing regarding Debtor's Motion for Reconsideration of the Auction Order. At this hearing, still another lawyer, Stuart P. Gelberg, Esq., ("Fourth Counsel") appeared for the Debtor. The Bankruptcy Court denied the Motion for Reconsideration. Fourth Counsel made an oral Motion for Stay of the order pending appeal, which the Bankruptcy Court also denied.

On July 26, 2005, the Bankruptcy Court held Debtor in contempt for failing to comply with its direction to produce documents and to turn over rents to Galster. Galster alleges, and Debtor does not dispute, that Debtor again failed to turn over rents to Galster.

On July 13, 2005, Debtor timely filed a Notice of Appeal of the Bankruptcy Court's Auction Order. Debtor argues that the Auction Order constitutes an improper modification of the Plan. On July 26, 2005, Debtor sought, and this Court granted, a temporary stay and directed the parties to show cause why the stay should not be extended pending the disposition of the appeal. On July 28, 2005, I issued a scheduling order for the appeal. Debtor's appeal brief was to be filed on or before September 8, 2005. On August 31, 2005, I denied Debtor's Motion for Stay pending appeal, finding that there was no likelihood of success on the merits. Debtor has filed a Notice of Appeal as to that decision in the Second Circuit Court of Appeals.

On September 27, 2005, the day of the auction, Debtor sought an emergency stay in the Court of Appeals. The Court of Appeals denied the stay. The auction took place as scheduled, and successful bids from good faith purchasers were received on all four properties.

On October 11, 2005, Roy J. Lester ("Fifth Counsel") requested, via facsimile, an extension of time in which to file the appeal brief as to the Auction Order, stating that his office had only recently been retained by Debtor. On October 12, 2005, creditor Galster moved to dismiss Debtor's appeal on the grounds of mootness and failure to prosecute. On October 28, 2005, I issued an amended scheduling order for the appeal, requiring the

Debtor to file his appeal brief and response to Galster's motion
to dismiss by November 4, 2005.

On October 31, 2005, after notice and hearing, the
Bankruptcy Court entered an order approving the sale of the
Properties (the "Sale Order") pursuant to 11 U.S.C. § 363(b).
The closings for the Properties were scheduled to take place on
November 17, 2005.

On November 4, 2005, Fifth Counsel submitted an appeal brief
and response to Galster's motion to dismiss the appeal on behalf
of Debtor.  On November 16, 2005, yet another set of attorneys,
Walter Drobenko and Linda F. Fedrizzi, ("Sixth Counsel"), sought,
on behalf of Debtor, an order to show cause and emergency stay of
the closings pending a new appeal.[7]  The closings were set to
take place the following day, on November 17, 2005.  Sixth
Counsel stated that Debtor intended to appeal another decision of
the Bankruptcy Court which denied a motion to modify the Plan.
Sixth Counsel further claimed that Debtor had secured a lender
who was willing to loan him $9,000,000 so that he could pay the
creditors without having to sell his properties.  The Bankruptcy
Court had denied Debtor's motion to modify the Plan and his
motion for stay of the closings pending appeal.  On November 16,

_____

[7]These attorneys failed to file an application for substitution and
displacement of attorneys with this Court and stated that they were only retained
for the limited purpose of filing the emergency stay motion.  Because they had not
been substituted as counsel by this Court pursuant to Local Rule 1.4, I declined
to sign the order to show cause and stay.

2005, I denied the application for an order to show cause and
emergency stay.

On November 17, 2005, the closings for three of the
Properties were set to go forward.[8]  The sale of one of the East
Hampton Property closed on that day as scheduled.  Galster
states, and Debtor disputes, that the sale of two other
properties (the Campbell Road Property and the Foster Avenue
Property) did not close because it was discovered that Debtor had
entered into another contract for the sale of the Campbell Road
Property in violation of the Auction Order, the Sale Order, and
Section 363 of the Bankruptcy Code which requires court approval
for sales of estate assets.  Galster contends that Debtor's
separate contract was discovered because, coincidentally, both
purchasers applied for funding at the same bank.  When the bank
discovered that two separate parties had applied for funds for
the same property, it temporarily stopped the issuance of funds
in order to clarify the discrepancy.  The closings of the
Campbell Road Property and the Foster Avenue Property were
rescheduled for November 23, 2005; however the closings did not
go forward because Debtor failed to appear at the closings.

---

[8]The sale of the 490 New York Avenue Property was temporarily delayed
because the first successful bidder failed to provide the additional deposit as
required under the sale agreement.  However, a contract with the second highest
bidder has already been executed, and the closing on that property rescheduled for
November 30, 2005.

Presently before the Court is creditor Galster's motion to dismiss Debtor's appeal of the Bankruptcy Court's Auction Order. Galster argues that the appeal should be dismissed on the grounds of mootness. For the following reasons, Galster's motion to dismiss is granted.

## DISCUSSION

### Jurisdiction

This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. 158(a).

### Mootness

It is well established that an appeal is rendered moot if the appellate court is unable to grant any effective relief. *See U.S. v. Salerno*, 932 F.2d 117, 123 (2d Cir. 1991); *Mills v. Green*, 159 U.S. 651, 653 (1895); *Northwest Environmental Defense Center v. Gordon*, 849 F.2d 1241, 1244-45 (9th Cir. 1988); *In re Cantwell*, 639 F.2d 1050, 1053 (3d Cir. 1981); *Miami Center Partnership v. Bank of New York*, 820 F.2d 376, 379 (11th Cir. 1987); *In re Stadium Management Corp.*, 895 F.2d 845, 847-848 (1st Cir. 1990); *In re Bleaufontaine*, 634 F.2d 1383, 1389-90 (5th Cir. 1981); *In re Vetter Corp.*, 724 F.2d 52, 55-56 (7th Cir. 1983); *Country Fairways, Inc. v. Mottaz*, 539 F.2d 637, 641 (7th Cir. 1976). In the present case, Debtor seeks to overturn the Bankruptcy Court's Auction Order, and thereby invalidate sales of

the Properties approved by the Bankruptcy Court pursuant to 11
U.S.C. 363(b).

However, 11 U.S.C. 363(m) states:

The reversal or modification on appeal of an
authorization under subsection (b) or (c) of this section
of a sale or lease of property does not affect the
validity of a sale or lease under such authorization to
an entity that purchased or leased such property in good
faith, whether or not such entity knew of the pendency of
the appeal, unless such authorization and such sale or
lease were stayed pending appeal.

It is not disputed that the buyers who purchased the Properties
were good faith purchasers.  It is also not disputed that Debtor
has been unable to obtain a stay of the sale of the Properties
pending appeal, despite his numerous attempts in Bankruptcy
Court, this Court, and the Court of Appeals.

Courts have uniformly held that if a debtor fails to obtain
a stay of a sale of properties, appeal of an order authorizing
the sale is rendered moot and must be dismissed once the sale to
good faith purchasers has taken place and has been approved.  *See
In re Gucci*, 105 F.3d 837, 840 (2d Cir. 1997) ("regardless of the
merit of an appellant's challenge to a sale order, we may neither
reverse nor modify the judicially-authorized sale if the entity
that purchased or leased the property did so in good faith and if
no stay was granted"); *see also U.S. v. Salerno*, 932 F.2d 117,
123 (2d Cir. 1991); *In re Stadium Management Corp.*, 895 F.2d 845,
847-848 (1st Cir. 1990); *In re The Charter Co.*, 829 F.2d 1054,
1056 (11th Cir. 1987); *In re Vetter Corp.*, 724 F.2d 52, 55-56

(7th Cir. 1983); *In re Sax*, 796 F.2d 994, 997 (7th Cir. 1986);
*Matter of Gilchrist*, 891 F.2d 559, 560 (5th Cir. 1990); *In re
Magwood*, 785 F.2d 1077, 1080 (D.C. Cir. 1986); *In re Royal
Properties, Inc.*, 621 F.2d 984, 987 (9th Cir. 1980); *In re Stein
& Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990); *In re
Southwest Products, Inc.*, 144 B.R. 100, 102-103 (BAP 9th Cir.
1992); *In re Southwest Products, Inc.*, 144 B.R. 100, 105 (BAP 9th
Cir. 1992). This rule applies even when the debtor has sought a
stay, but the stay has been denied. *See In re Gucci*, 105 F.3d at
840 (holding that "even where an appellant timely moves to stay a
judicially-authorized sale, a district court's denial of that
motion will similarly limit the issues on appeal"). Moreover,
this rule applies even where the debtor believes the sale has
been wrongly authorized. *See In re Stadium Management Corp*., 895
F.2d at 849 ("Section 363(m) does not say that the sale must be
*proper* under § 363(b); it says that the sale must be *authorized*
under § 363(b)....[I]t matters not whether the authorization was
correct or incorrect"); *see also In re Sax*, 796 F.2d at 997-98.

Two policy reasons are recognized for such a rule. First,
the rule furthers the policy of finality in bankruptcy sales.
Second, the rule allows bankruptcy courts to maximize profits
from such sales. "Otherwise, potential buyers would discount
their offers to the detriment of the bankrupt's estate by taking
into account the risk of further litigation and the likelihood

that the buyer will ultimately lose the asset, together with any further investments or improvements made in the asset." *U.S. v. Salerno*, 932 F.2d at 123; *see also In re Stadium Management Corp.*, 895 F.2d at 847-848; *In re Onouli-Kona Land Co.*, 846 F.2d 1170, 1172-73 (9th Cir. 1988); *In re Sax*, 796 F.2d at 998; *In re Vetter Corp.*, 724 F.2d at 55-56; *In re Stein & Day, Inc.*, 113 B.R. at 162; *In re Southwest Products, Inc.*, 144 B.R. at 105.

Debtor attempts to distinguish these cases by arguing that in those cases, the courts issued their rulings after closing, whereas in the present case, closing on three of the properties has not yet occurred. While it is true that, likely owing to the time it takes a case to make its way to the Courts of Appeals, in the majority of the cases cited above the sale closings had already taken place, this distinction is not determinative. In those cases, the courts were not asked to draw a distinction between sales before closings and sales after closing. The critical step is approval by the bankruptcy court, not closing. *See, e.g., In re Stadium Management Corp.*, 895 F.2d at 849; *In re Vetter Corp.*, 724 F.2d at 55-56. Debtor has provided no case law which supports the proposition that appeal of an order authorizing a sale is not moot after approval of the sale but before closing. To the contrary, the courts that have examined this issue have held that the appeal is moot even before closing. *See In re Southwest Products, Inc.*, 144 B.R. at 105 (holding that

"the fact that the sale may not be fully consummated does not prevent a determination that the appeal is moot because section 363(m) does not require the purchaser to take irreversible steps consummating the sale before the absence of a stay will render an appeal moot"); *see also In re Exennium, Inc.*, 715 F.2d 1401, 1404 (9th Cir. 1983); *In re Royal Properties, Inc.*, 621 F.2d at 987. "The underlying purposes of the need for finality and the protection of good faith purchasers are implicated regardless of whether the purchaser takes such irreversible steps." *In re Southwest Products, Inc.*, 144 B.R. 105.

In the present case, successful bids have been received on all four Properties, sales contracts have been executed with respect to all four Properties, the Bankruptcy Court has issued an order approving the sales of the Properties pursuant to § 363, the closing of one of the sales has occurred, and the closings of the remaining sales have been scheduled. Accordingly, I conclude that the present appeal is moot and must be dismissed.

## CONCLUSION

For the reasons set forth above, Galster's motion to dismiss Debtor's appeal of the Bankruptcy Court's Auction Order is granted.

The Clerk is directed to furnish a filed copy of the within to all parties and to the Bankruptcy Court.

SO ORDERED.

Dated :    Brooklyn, New York

           November 30, 2005




                    By: <u>/s/ Charles P. Sifton (electronically signed)</u>
                        United States District Judge